JUDGE DANIELS

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| OMER W. KHWAJA, | : | |
| | : | Civil Action No.: |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | **COMPLAINT WITH JURY DEMAND** |
| JOBS TO MOVE AMERICA, | : | |
| MADELINE JANIS, | : | |
| LINDA PEREZ-NGUYEN, | : | |
| ABC CORPS I-X; | : | **19 CV   7070** |
| | : | |
| Defendants. | : | |

Plaintiff Omer Waqas Khwaja Esq. ("Plaintiff"), for his Complaint against his former employer, Jobs to Move America ("JMA"), Madeline Janis, and Linda Perez-Nguyen (together "Defendants"), hereby alleges:

### PRELIMINARY STATEMENT

1.    Plaintiff alleges that Defendants Jobs to Move America ("JMA"), Madeline Janis ("Defendant Janis"), and Linda Perez-Nguyen ("Defendant Nguyen") directly and through their agents, unlawfully discriminated against him based on his gender and also because he is a man of color and, further, that Defendants retaliated against him for requesting Defendants to correct their unlawful actions against him and also against others.

2.    Plaintiff further alleges that Defendants denied Plaintiff equal compensation based on his gender and retaliated against him for requesting Defendants correct unlawful actions against him and also against others.

3.    Defendants' unlawful retaliation was designed to cause Plaintiff harm in the form of emotional damage through a series of escalating acts by Defendants that subjected Plaintiff to

1

an increasingly hostile work environment resulting in his termination. (EXHIBIT A. "Termination Letter") Plaintiff is legitimately concerned about his ability to be reintegrated into his circle of friends and business associates due to the abruptness of the events leading to his termination as well as efforts made by Defendants to prevent Plaintiff from reaching out to colleagues within the labor community for guidance and support.

4.      Plaintiff seeks injunctive and declaratory relief, compensatory damages, punitive damages, liquidated damages, reasonable attorneys' fees, and any other relief the Court may deem just and proper.

## I.      PARTIES

5.      Plaintiff Omer Waqas Khwaja Esq. is an individual who resides in The State of New Jersey. At all relevant times, Plaintiff met the definition of "employee" under all relevant statutes.

6.      Defendant Jobs to Move America ("JMA"), is a not-for-profit corporation with its corporate address listed as 525 S. Hewitt Street, Los Angeles, CA 90013 and conducts business in New York through two offices located at a shared office facility at 25 Broadway, 9th Floor, New York, NY 10004. At all relevant times, Defendant JMA met the definition of "employer" under all relevant statutes.

7.      Defendant Madeline Janis ("Defendant Janis") is a resident of California and is a co-founder and Executive Director of JMA.  At all relevant times, Defendant Janis met the definition of "employer" under all relevant statutes.

8.      Defendant Linda Nguyen-Perez ("Defendant Nguyen") is a resident of California and is a co-founder and Deputy Director of JMA.  At all relevant times, Defendant Nguyen met the definition of "employer" under all relevant statutes.

## II.   NATURE OF CLAIMS

9.      In this action, Plaintiff seeks declaratory, injunctive and equitable relief, as well as monetary damages, to redress the harm caused by Defendants' unlawful employment practices, including unlawful discrimination against Plaintiffs in violation of 42 U.S.C. § 1981 ("§ 1981"), Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e-2(a) ("TITLE VII"), the New York State Human Rights Law, N.Y. Executive Law §§ 290 et seq. ("NYSHRL"), the New York City Human Rights Law, New York City Administrative Code §§ 8-101 *et seq.* ("NYCHRL"), the Equal Pay Act of 1963, 29 U. S. C. § 206(d) ("EPA"), and the New York Equal Pay Law, New York Labor Law § 194 ("EPL").

### III. JURISDICTION AND VENUE

10.     This Court has jurisdiction over Plaintiff's Title VII, § 1981, and EPA claims under 28 U.S.C. § 1331.

11.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's EPL, NYSHRL and NYCHRL claims because these claims closely relate to the § 1981 and EPA claims, having arisen from a common nucleus of operative facts, such that all claims form part of the same case or controversy.

12.     Pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e), venue is proper in this district because a substantial part of the events or omissions giving rise to this action, including unlawful practices alleged herein, occurred in this district.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

13.     Plaintiff timely filed charges of discrimination in the United States Equal Employment Opportunity Commission ("EEOC"). On or around June 2019, the EEOC issued Plaintiff Notice of Right to Sue. (EXHIBIT B. "Right to Sue Letter")

14.     Plaintiff is seeking resolution of Defendants' mishandling of his claims for Paid Family Leave under the New York State Law through proceedings initiated by Plaintiff at the New York State Workers Compensation Board.

## V. ALLEGATIONS

15.     Plaintiff is a thirty-six year old man of Pakistani descent and is known to Defendants to be a man of color and a person who self-identifies as a political Muslim.

16.     Plaintiff was offered and accepted a position of Campaign Director at defendant organization Jobs to Move America's ("JMA") New York office in December 2017.

17.     Plaintiff has worked for various labor organizations and other advocacy groups for nearly a decade and has over four years of experience recruiting, hiring, supervising, and training staff.

18.     Plaintiff's first and only child was born on December 7, 2017.

19.     Plaintiff first notified Defendant Nguyen and Julia Portillo, then JMA's Human Resources manager, of the birth of his child on his first day of work, on or about January 8, 2018.

20.     When he started employment on January 8th with Defendants, Plaintiff was one of only four male employees working for Defendants and the only employee in JMA's New York Office.

   a.     At that time, Plaintiff was one of two male managers at JMA.

      b.     At this time, Defendants have no male managers employed at any of their offices.

21.    Defendants did not pay Plaintiff until six weeks after his first day at work and did not furnish any explanation for their failure to pay him on time.

22.    Even though Defendants knew or should have known about their responsibility to provide "proper written guidance" to all employees about the New York Paid Family Leave Act of 2019, Plaintiff received no such notification.

23.    During the course of his employment with JMA, Plaintiff was paid less than the only similarly situated Director, a female, even though he had more years of experience and was expected to perform an equivalent or greater amount of work with less resources and staff.

24.    Plaintiff raised the issue of pay equity in writing with Defendant Nguyen at various times after the end of his 6-month probationary term.

25.    Despite Plaintiff's multiple requests, Defendant JMA failed to adjust Plaintiff's pay.

26.    Plaintiff knew about his eligibility for leave under New York State law, but did not formally request such leave until May 2018 because Defendant Nguyen and others indicted the possibility of retaliation in the event he were to seek leave.

      a.     While Defendants permitted Ms. Alaa Milbes, a female employee, to receive full pay during the time she was off under the parental leave policy set forth in JMA's employee handbook, Plaintiff was denied the same benefit because Plaintiff was a man and, therefore, not his child's primary caregiver.

b.      On his first day of employment, Human Resources Manager Portillo told Plaintiff that JMA informed her that Plaintiff was ineligible for the "generous" parental leave offered by JMA, as he was not the child's primary caregiver.

c.      After Plaintiff's wife returned to work in April 2018, Plaintiff performed equal or more duties in taking care of his infant son.

d.      Plaintiff's increased share of parental duties was known to Defendants because Plaintiff requested that he be permitted to work from home every Friday starting April 1, 2018. Defendant Nguyen granted this request.

e.      Plaintiff did not receive notice of any formal expectations from JMA until March or April 2018 when Defendant Nguyen informed Plaintiff he would be given a mid-probation evaluation.

f.      On May 7, 2018 Plaintiff provided notice of Paid Family Leave to Defendant Nguyen.

g.      On May 9, 2018 Plaintiff requested that Defendant Nguyen inform Defendant Janis about his desire to take paid family leave while both Defendants were in Detroit for a meeting.

i.      Plaintiff waited until he received JMA employee expectations from Defendant Nguyen before making his request to seek paid family leave to bond with his child.

ii.      Plaintiff received an outstanding 6-month evaluation from 4 co-evaluators in or around the week of June 8th.

iii.      Plaintiff did not receive a written copy of his evaluation until he demanded to see it on January 31st, 2019 when he first learned about false charges

of performance issues made against him and expressed concerns that someone at the organization might tamper with the drive.

    iv.    <u>On June 12th, Plaintiff gave Defendant Nguyen a complete set of dates he was requesting off, including dates requested off for family leave.</u>

    v.    Instances where Defendants subsequently attempted to dissuade Plaintiff from requesting parental leave include the following:

    a.    Defendant Nguyen told Plaintiff that she had experienced difficulty as a new mother when she started work as an intern for LAANE, JMA's parent organization because of Defendant Janis' unwillingness to grant such leave.

    b.    Defendant Nguyen demanded Plaintiff write a memo outlining Paid Family Leave law prior to granting Plaintiff's family leave request.

    c.    On several occasions, Defendant Nguyen stated that such a memo would be necessary as Defendant Janis would likely "play hardball," as Plaintiff was a strong performer and that Defendant Janis had a tendency to protect some members of the JMA staff while expecting others to "pick up the slack."

    d.    Defendant Nguyen would spend an inordinate amount of time during her regularly scheduled weekly check-ins with Plaintiff interrogating Plaintiff about his personal life and regularly instructed Plaintiff to sign-up for a flexible spending account so he could enroll his child in daycare.

7

e.      Defendants threatened Plaintiff with the possibility of termination if he sought to take leave.

f.      Defendants actively instigated conflict between Plaintiff and JMA staff, including Alaa Milbes, then working as JMA communications specialist once she had returned to work from parental leave.

vi.      Once Plaintiff's request for family leave had been processed by the New York State Insurance Fund, Defendants engaged in the following acts in unlawful retaliation against Plaintiff:

a.      denying full enjoyment of cell-phone reimbursement and other benefits enjoyed by similarly situated staff;

b.      On or about July 26, 2018, Defendant Janis instructed Plaintiff to take sick leave instead of taking paid family leave as he had scheduled. At that time, Defendant Janis also acknowledged that Defendants' Human Resources Manager, Ms. Portillo had behaved inappropriately in writing harassing and disrespectful emails to Plaintiff relating to his time off requests. Plaintiff's attempts to record his time off as sick time as instructed by Ms. Janis imposed undue administrative burdens and confusion, reigniting conflict and hostility between Plaintiff and Ms. Portillo;

c.      Defendant Janis remarked that it was unusual for Plaintiff, a man, to be so actively involved in caring for his infant son;

8

d.      Defendant Nguyen instructed Plaintiff that he could no longer work from home on Fridays, an accommodation that had previously been granted at Plaintiff's request. JMA placed no such restriction on other staff and even permitted Ms. Milbes, a female employee, to work from home on most days;

e.      After she ignored and delayed Plaintiff's timely requests for guidance in taking family leave, Defendants' Human Resources Manager, Ms. Julia Portillo initiated an intense campaign of harassment once Plaintiff formally made his demand to take leave. Ms. Portillo's actions included:

i.      threats made against Plaintiff on account of how his time was recorded. These threats were made as late as the last day of Plaintiff's time off in December 2018;

ii.      forcing Plaintiff to work during days scheduled off for family leave because he had to intercede in disputes between Ms. Portillo and members of the New York team;

iii.      preventing him from taking sick time that he was otherwise entitled to take.

27.      During Plaintiff's employment at JMA, Defendant Nguyen withheld significant details, information, and relationships regarding JMA's prior work in New York, made inaccurate and defamatory statements to Plaintiff about JMA staff, JMA partners, and family members of JMA staff and partners, prevented Plaintiff from recruiting staff or access other resources available

to him to accomplish campaign goals, instructed Plaintiff to ignore or rebuff attempts by potential partners to advance JMA's New York and New Jersey campaigns, and encouraged Plaintiff to cultivate relationships on behalf of JMA that were likely to cause injury to board members and partner organizations while benefiting Defendant Nguyen personally.

28.     At all times during Plaintiff's time working for Defendants, Defendants expressed an animus generally towards men and specifically towards men of color by disparaging JMA staff, staff from partnering organizations, applicants for employment, prospective board member. Defendants disparaged and stereotyped individuals based on their color, race, ethnicity, sex, gender and other protected characteristics. Instances where Defendants expressed such animus include:

a.     Defendant Nguyen twice disparagingly referred to Plaintiff as being trapped in a old, white man's body;

b.     Defendants made remarks about the race of Plaintiff's biological child;

c.     Defendant Nguyen and others made racially charged and disparaging remarks about Defendant Janis and other white and Jewish women associated with JMA with the goal of influencing Plaintiff's behavior towards the disparaged individuals;

d.     Defendant Nguyen insisted that Plaintiff should not offer a full-time organizer position to a white woman working as a temporary employee at JMA because she would not be able to work in black and brown communities.

e.     Defendant Janis casually stated that she understood that Plaintiff permitted an African American male employee to bring another staff member as a witness to a disciplinary conference to prevent "shouting" and other emotional outbursts even though Ms. Janis had no reason to expect that behavior from the disciplined employee. Ms. Janis

subsequently instructed her subordinate, Ms. Veeder, to terminate the employment of the staffer who had served as witness to the disciplinary meeting.

     f.     In the course of meetings with JMA's managers, Defendant Janis defended JMA's inability to retain African American employees by asserting that Defendants had unusually high standards that would not be met by making "affirmative action hires."

     g.     On numerous occasions, Defendants Janis and Nguyen made inappropriate and derogatory remarks about prominent black figures such as Van Jones, Spike Lee, and Dave Chapelle.

     h.     Defendants inappropriately and falsely characterized the American labor movement as a movement led by white males in an attempt to justify Defendants' engagement with funders and partners fundamentally opposed to organized labor.

     i.     Defendant Janis regularly, and in the presence of funders and junior staff members including Plaintiff, spoke disparagingly of men and characterized them as "violent" based on behavior purportedly exhibited by the father of her children. Ms. Janis would then add patronizing and uncomfortable remarks like, "of course, Omer isn't like that," or "Omer is one of the very few non-violent ones."

     j.     Defendant Janis treats men of color, including immigrant men of color such as Plaintiff, worse than white men.

     k.     Defendant Nguyen stated on numerous occasions that Defendant Janis referred to the Ukrainian wife of Todd Andersen, a high-level official at an organization partnered with JMA, as a "mail-order bride."

     l.     When she returned from her leave in September 2018, Defendant Nguyen informed Plaintiff that she and Defendant Janis were only considering women as

11

candidates for the Director position in JMA's Chicago office. Defendant Nguyen made these comments after Plaintiff offered to contact a Black male colleague who he believed would be good for the position.

29.     Defendants took, or attempted to coerce Plaintiff to take, the following unlawful actions that posed harm directly to JMA, staff members, partners, and applicants for employment at JMA's New York Office:

a.     Preventing Plaintiff from hiring the best candidate for the open organizer New York position because that candidate "was a young woman of color" and, therefore, "more suited for a researcher position." Defendants did so to pressure Plaintiff into hiring a black male organizer as Defendant Janis was eager to fire JMA's only other black, male staff member;

b.     Instructing Plaintiff to recruit and hire candidates based on the racial and gender characteristics preferred by Defendants' current and potential funders, board members, and partner organizations;

c.     Defendant Nguyen instructed Plaintiff to compel probationary staff at the New York Office to engage in concerted activity that was purported to benefit the organization and which Defendant Nguyen later admitted was intended to benefit herself and Plaintiff's counterpart in California;

d.     In October 2018, Defendants instructed Plaintiff to remove from the agenda of a regularly held Directors' call various items dealing with improved working conditions and accommodations for new and probationary staff as well as updating the employee handbook to comply with requirements in the New York State paid parental leave legislation.

e.      Instructing Plaintiff to assist Defendants in unlawfully acquiring confidential information about charges filed with the Equal Employment Opportunity Commission (EEOC) by sharing information about JMA campaigns with a former EEOC employee, while that employee still had access to the EEOC's internal database. Plaintiff was placed on administrative leave within a short period of time after he stated that he would not participate in such illegal activity.

f.      Defendants Janis and Nguyen instructed Plaintiff to terminate a Black employee after that employee stated during a staff meeting that, in addition to advocating for public dollars to create entry level laborer jobs for disadvantaged communities, JMA should also advocate for increased opportunities for people of color in Science, Technology, Engineering, and Math (STEM) fields as well.

g.      In an effort to protect his team from Defendants' actions, Plaintiff informed his staff about Defendants' unlawful practices and raised concerns internally with all staff members, including other managers, about Defendants' unlawful and discriminatory stereotyping of men, including male employees, as well as JMA' failure to comply with New York State law requiring employers to develop a written sexual harassment policy and to train staff on that policy.

h.      New York State law, Plaintiff worked with staff members to prepare a blog post detailing anti-harassment legislation that had been recently adopted in New York State. He also shared his personal experience about his wife's psychological condition after being harassed by a female coworker.

i.      Defendants used their knowledge of Plaintiff's emotional attachment to the issue of workplace harassment to provoke a bizarre and exquisitely cruel form of retaliation.

j.      As described above, Defendants have an open and notorious practice of manipulating, cajoling, or otherwise pressuring probationary employees to achieve their personal objectives and later discarding those probationary employees summarily in order to dispose of evidence as part of an unlawful risk mitigation strategy.

k.      During the course of a Directors' conference, Defendants thwarted Plaintiff's plan to publish a blog post as authored by two female staffers working at the New York Office and instead instructed him to include his own name as the primary author.

l.      On the day of Governor Cuomo's State of the State address, minutes before the article was scheduled to be published, Plaintiff was informed by Ms. Alaa Milbes, who had been promoted to Communications Director for Defendant Employer, that it was inappropriate for him, as a man, to author a piece about sexual harassment and that Defendant Nguyen should be mentioned as the primary author instead.

m.      Plaintiff succumbed to this provocation and, in the presence of the two probationary female staff involved in writing the article who were familiar with Plaintiff's own personal experience with a victim of workplace harassment, had an emotional outburst.

n.      On the same day as Governor Cuomo's State of the State, and while still in an emotionally disturbed state, Plaintiff spoke to four other staff members, including

14

Defendants Nguyen and Janis, about how he felt that he was being silenced as a man from sharing his valuable, personal perspective on workplace harassment.

       o.     Defendants Nguyen and Janis did not acknowledge Plaintiff's grievance. Instead, they were unempathetic and cold upon learning about his harrowing experience caring for a victim of workplace harassment and told him to stay home the next say because one of the probationary staffers who witnessed his emotional outburst purportedly reported that she feared for her safety at work.

       p.     On or about January 17th, 2019, Defendant Nguyen informed Plaintiff that his behavior and performance as New York Director was being investigated by the JMA Board and outside counsel and that he would be placed on administrative leave during that time.

       q.     Plaintiff was also instructed not to contact any staff members or affiliated organizations until the investigation concluded.

       r.     Plaintiff requested to be informed of the allegations against him as soon as possible. No one from JMA contacted Plaintiff for nearly two weeks during which Plaintiff experienced severe mental and emotional disintegration.

       s.     Plaintiff never spoke to a Board member, outside counsel, or any of his purported accusers during the course of JMA's sham investigation.

       t.     On January 30, 2019, Plaintiff was informed that his privileges to the JMA drive were temporarily suspended.

       u.     On January 31st, 2019, Plaintiff learned for the first time through an email sent by Defendant Nguyen that he was being investigated for "serious performance issues" in addition to bullying several young female staff members.

15

30.     Unsatisfactory performance and bullying allegations were entirely fabricated in order to create a pretext for firing Plaintiff.

31.     Defendants held an investigatory conference with Plaintiff on February 4th but did not share any meaningful details regarding the allegations against him and even refused to share his personnel file with him prior to the investigatory interview.

32.     On Plaintiff's request, Defendant Janis informed him that he was accused of bullying female staff at the New York office and that Defendants Janis and Nguyen had previously had concerns about his performance as a Director which were also being investigated.

33.     Plaintiff requested that his personnel file be sent to him prior to February 4th. Defendant told him that he would get his file on the Friday after the interview despite Plaintiff sharing concerns that pertinent information contained in Defendant Employer's drive would be compromised.

34.     Defendants have manipulated or deleted information from Defendant Employer's drive as a litigation risk mitigation effort.

35.     On February 4, 2019, Plaintiff spoke to Defendants Janis and Nguyen in a recorded video call. Plaintiff's attorney was not permitted to attend this conference.

36.     During the video conference call, in addition to asking Plaintiff about his outburst on January 15th, 2019, Defendants informed Plaintiff that allegations of bullying by staff included Plaintiff talking loudly on the phone in the presence of staff, pacing in the office, talking inappropriately about coalition partners and staff members from other teams, giving pop quizzes, assigning demeaning roles to staff members, using foul language, and "pacing."

37.     The allegations of bullying against Plaintiff were entirely fabricated in order to manufacture a pretext for terminating Plaintiff.

38.     During the investigatory call, Plaintiff shared with Defendants that he was seeking psychological counseling for the events leading up to and including January 15th. Defendants were cold and unempathetic in response and advised Plaintiff to seek anger management instead.

39.     During this interview, Plaintiff also mentioned that he had been asking for months for JMA to comply with New York State's anti-harassment legislation which would have required staff to be trained on identifying instances of harassment and how to report them within the organization.

40.     During the same interview, Plaintiff expressed concerns that the homogeneous composition of Defendants' staff and JMA's culture of backbiting presented risk factors for all staff members that could be mitigated through compliance with the New York state anti-harassment law.

41.     Plaintiff also stated that he had shared information about JMA's culture in order to protect his team and allay their concerns about job security after witnessing the sudden termination of other staff members.

42.     Defendant Nguyen shared that staff had come together because of their opposition to attending daily morning briefs and evening check-ins mandated by Plaintiff.

43.     Defendant Janis admitted that she and Defendant Nguyen had been considering removing Plaintiff from his role "for some time" prior to the surfacing of allegations of bullying against him and had even considered assigning him to a different role even though Plaintiff had received no previous notice of the performance issues alleged against him for the first time on February 4th, 2019 nor had he been given an opportunity to correct the alleged performance deficiencies.

44.     At all relevant times Defendants have included a just cause termination provision in their employee handbook.

45.     Plaintiff stated that the allegations relating to his performance had never been brought to his attention and again demanded to see his personnel file.

46.     Plaintiff attempted to address each of the allegations raised concerning his performance even though Defendants had raised these issues for the first time.

47.     At the end of the interview, Defendant Janis told Plaintiff to consider his time off as a vacation even though Plaintiff was visibly distraught during this encounter and had shared that he was undergoing psychological therapy.

48.     On February 6th, 2019, Plaintiff was informed that he was being terminated effective Friday, February 8th, through a letter delivered to his email.

49.     Plaintiff did not receive a written copy of his 6-month evaluation until several weeks after he had demanded to see his Personnel File on January 31st, 2019.

50.     As released to the Plaintiff, his 6-month evaluation is incomplete as it is missing one or more pages. Co-evaluators' remarks were also excluded.

51.     There are no notes indicating serious performance issues in Defendant's file prior to January 2019.

52.     Plaintiff was at all times while employed by Defendants, qualified to perform the duties required of him.

53.     Once Plaintiff unequivocally made known to Defendants that he would seek family leave under New York State Law, Defendants engaged in an escalating pattern of severe and pervasive abuse and harassment such that the conditions of Plaintiff's employment were altered because Defendant is a male.

18

54.     Defendants imposed daily and hostile conditions upon Plaintiff's employment because of his gender that they did not impose upon his female counterparts including verbal harassment, name calling, length of time he was required to work, expectation to work after hours, responsibility for other employees' errors, and unequal pay and opportunity.

55.     Plaintiff's emotional well-being and domestic relations have been severely impacted by Defendants' unlawful and retaliatory conduct against him. He has virtually withdrawn from all of his past associations in the labor movement, including his position as a co-coordinator for the New York alumni chapter of the Peggy Browning Fund and board member for the Metro New York Labor Communications Council. He has eschewed social and professional opportunities out of shame and concern for further psychological harm. His relationship with his wife has been strained by the loss of income while caring for an infant and embarrassment for abruptly losing his job.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

Gender, National Origin, and Race-based Discrimination in Violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e-2(a)

56.     Plaintiff repeats and incorporates the allegations set forth above by reference.

57.     Plaintiff was discriminated against and treated differently by Defendants because he is a man.

58.     Plaintiff was further discriminated against and treated differently by Defendants because he is a man of color.

59.     Plaintiff was further discriminated against and treated differently by Defendants because he is an immigrant man of color.

60.     Plaintiff was further discriminated against and differently by Defendants because he is an immigrant man of color.

61.     Defendants unlawfully discriminated against Plaintiff with respect to his compensation, terms, conditions, and privileges of employment.

62.     Defendants' actions were motivated by their negative perception of men, particularly men of color, and immigrant men of color.

63.     Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on sex, race, and national origin.

64.     As a direct, legal and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

65.     Plaintiff is entitled to all legal and equitable remedies available for violations of Title VII, including back pay, front pay, compensatory damages, punitive damages, and other appropriate relief. Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

## SECOND CAUSE OF ACTION

### VIOLATION OF TITLE VII, 42 U.S.C. § 2000e-3 – RETALIATION

66.     Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

67.     Throughout his employment with Defendants, but particularly after he had notice from Defendant Nguyen regarding his expectations and assured that he would be passing probation, Plaintiff repeatedly voiced concerns about Defendants' unfair compensation system, their discriminatory parental leave policy, and their failure to comply with New York state discrimination and harassment prevention laws.

68.     In retaliation for Plaintiff's exercise of his rights, and his opposition and resistance to their unlawful conduct, Defendants sought to cause harm to Plaintiff in the terms and conditions of employment on the basis of gender, race, color, and national origin including, inter alia, by creating a hostile work environment targeting his gender, in violation of Title VII, and wrongfully terminating him.

69.     Plaintiff was subjected to a pervasive and escalating pattern of harassment by Defendants and Defendants' agents and employees in retaliation to Plaintiff's protected complaints, objections, and resistance to Defendants' unlawful policies and practices, particularly those policies and practices in which Defendants showed a clear preference for female employees and sought to disadvantage male employees.

70.     Additionally, Plaintiffs Nguyen and Janis used their influence as principals of JMA to create a hostile work environment targeting Plaintiff because of Plaintiff's protected opposition and resistance to their unlawful practices as well as his gender to justify terminating him in violation of the just cause provision of his employee handbook.

71.     Defendants unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from retaliation on the basis of his opposition to, and attempt to correct, the unlawful discrimination.

## THIRD CAUSE OF ACTION

### (Equal Pay Act of 1963, 29 U. S. C. § 206(d) ("EPA")

72.     Plaintiff repeats and incorporates the allegations set forth in paragraphs above by reference.

73.     During Plaintiff's period of employment, Defendants were subject to the provisions of the EPA.

74.     Section 206(d)(1) of the EPA prohibits Employers from discriminating "between employees on the basis of sex by paying wages to employees… at a rate less than the rate at which he pays to employees of the opposite sex… for equal work on jobs the performance of which requires equal skill, efforts, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system, (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex."

75.     During Plaintiff's period of employment, Defendants required Plaintiff to perform the same or substantially the same job duties as female employees, requiring equal or more skill, effort, and responsibility, under similar working conditions, and paid Plaintiff less than such female employees. The differential rate of pay was not part of or occasioned by a seniority system, merit system, a system based on the quantity or quality of production, or upon a factor other than gender.

76.     Defendants discriminated against Plaintiff on the basis of gender and by paying Plaintiff a lesser rate of pay, including salary than that paid to male employees performing the same or substantially similar job duties which require equal skill, effort, and responsibility, and under the same working conditions.

22

77.     By the actions described above, among others, Defendants have violated the EPA.

78.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the Equal Pay Act, Plaintiff has suffered, and continues to suffer, harm for which he is entitled to an award of monetary damages and other relief.

79.     Plaintiff is further entitled to liquidated damages, reasonable costs and attorneys' fees.

## FOURTH CAUSE OF ACTION

### (Retaliation in Violation of EPA)

80.     Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

81.     By the acts and practices described above, Defendants have retaliated against Plaintiff for his opposition and resistance to their unlawful conduct and employment practices under the EPA, including, inter alia, by creating a hostile work environment, in violation of the EPA, § 215(a)(3).

82.     Defendants knew that their actions constituted unlawful retaliation and/or acted with malice or reckless indifference to Plaintiff's statutorily protected rights.

83.     Defendants' acts were willful within the meaning of the EPA.

84.     As a result of Defendants' retaliatory acts, Plaintiff has suffered and will continue to suffer irreparable injury, monetary damage, and damages for mental anguish and emotional distress unless and until this Court grants relief.

23

FIFTH CAUSE OF ACTION

Violation of the New York Equal Pay Law - NY Labor Law § 194 Denial of Equal Pay for Equal Work

85.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

86.     Defendants have discriminated against Plaintiff in violation of the New York Labor Law § 194, by subjecting him to unequal pay on the basis of sex.

87.     Defendants have discriminated against Plaintiff by treating him differently from and less preferably than similarly situated male employees who performed jobs which required equal skill, effort, and responsibility, and which were performed under similar working conditions. Defendants so discriminated by subjecting him to discriminatory pay, discriminatory denials of compensation incentives, and other forms of discrimination in violation of the New York Equal Pay Law.

SIXTH CAUSE OF ACTION

Violation of Civil Rights Act 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991

88.     Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

89.     Defendants' discrimination against Plaintiff, a citizen of Pakistani origin, is in violation of his rights afforded him by §1981.

90.     By the conduct described above, Defendants intentionally deprived Plaintiff of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all

24

benefits and privileges, of his contractual employment relationship with JMA, in violation of §1981.

91.     As a result of Defendants' discrimination in violation of §1981, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling him to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendants' actions, thereby entitling him to compensatory damages.

92.     In the discriminatory actions as alleged above, Defendants have acted with malice or reckless indifference to Plaintiff's rights thereby entitling him to an award of punitive damages.

SEVENTH CAUSE OF ACTION

(Retaliation in Violation of §1981)

93.     Plaintiff repeats and incorporates the allegations set forth in paragraphs above by reference.

94.     By the actions described above, among others, Defendants retaliated against Plaintiff on the basis of his opposition and resistance to their unlawful conduct and employment practices.

95.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of §1981, Plaintiff has suffered, and continues to suffer, emotional distress for which he is entitled to an award of compensatory damages.

96.     Defendants' unlawful and retaliatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under §1981 for which Plaintiff is entitled to an award of punitive damages.

## EIGHTH CAUSE OF ACTION

### (Gender Discrimination: NYSHRL)

97.     Plaintiff repeats and incorporates the allegations set forth in paragraphs above by reference.

98.     By the acts and practices described above, Defendants discriminated against Plaintiff in the terms and conditions of employment on the basis of his gender, including, inter alia, by creating a hostile work environment because of his gender, in violation of the NYSHRL.

99.     As a result of Defendants' discriminatory acts, Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damages unless and until this Court grants relief.

## NINTH CAUSE OF ACTION

### (Retaliation: Section NYSHRL)

100.     Plaintiff repeats and incorporates the allegations set forth in paragraphs above by reference.

101.     By the acts and practices described above, Defendants retaliated against Plaintiff for his opposition and resistance to Defendants' unlawful discrimination and other employment practices under the NYSHRL, including, inter alia, by creating a hostile work environment in violation of the NYSHRL.

102.     As a result of Defendants' retaliation, Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damages unless and until this Court grants relief.

TENTH CAUSE OF ACTION

(Gender Discrimination: NYCHRL)

103.     101. Plaintiff repeats and incorporates the allegations set forth in paragraphs above by reference.

104.     102. By the acts and practices described above, Defendants discriminated against Plaintiff in the terms and conditions of employment on the basis of his gender, including, inter alia, by creating a hostile work environment on the basis of his gender, in violation of the NYCHRL.

105.     103. As a result of Defendants' discriminatory acts, Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damages unless and until this Court grants relief.

ELEVENTH CAUSE OF ACTION

(Retaliation: NYCHRL)

106.     Plaintiff repeats and incorporates the allegations set forth in paragraphs above by reference.

107.     By the acts and practices described above, Defendants retaliated against Plaintiff for his opposition and resistance to unlawful discrimination and other employment practices under the NYCHRL, including, inter alia, by creating a hostile work environment on the basis of his opposition to unlawful discrimination, in violation of the NYCHRL.

108.     As a result of defendants' retaliation, Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damages unless and until this Court grants relief.

## TWELFTH CAUSE OF ACTION

### (Aiding and Abetting in Violation of the NYSHRL)

109.    Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

110.    Defendants knowingly or recklessly aided and abetted the unlawful employment practices, discrimination and retaliation against Plaintiff in violation of the NYSHRL.

111.    As a direct and proximate result, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past income, future income, compensation and benefits, for which he is entitled to an award of monetary damages and other relief.

112.    As a direct and proximate result, Plaintiff has suffered, and continues to suffer, emotional distress for which he is entitled to an award of monetary damages and other relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment:

(a) declaring that the acts and practices complained of herein are in violation of Title VII, §1981, the EPA, the NYSHRL, and the NYCHRL;

(b) enjoining and permanently restraining these violations;

(c) directing Defendants to take such affirmative action as is necessary to ensure that the effects of these violations are eliminated and do not continue to restrict Plaintiff's employment opportunities;

(d) directing Defendants to place Plaintiff in the position he would have occupied but for defendants' discriminatory and retaliatory treatment against him, and to make him whole

28

for all earnings he would have received but for Defendants' discriminatory and retaliatory treatment, including but not limited to, wages, retirement, interest, and other lost benefits;

(e) directing Defendants to pay Plaintiff compensatory damages for his mental anguish, emotional distress, and humiliation;

(f) directing Defendants to pay Plaintiff punitive damages;

(g) awarding Plaintiff pre- and post-judgment interest;

(h) awarding Plaintiff the costs of this action together with reasonable attorneys' fees; and

(i) granting such other and further relief as this Court deems necessary and proper.

## DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury in this action.

Dated: July 29, 2019

BY: _____

Omer W. Khwaja, Esq.
*Plaintiff Pro se*
okhwaja@gmail.com

29

# EXHIBIT A

# JOBS TO MOVE
# AMERICA

**BOARD OF DIRECTORS**

**Ed Wytkind, Chair**
President, EW Strategies LLC

**Dr. Beverly Scott, Vice-Chair**
Beverly Scott & Associates

**Robert Puentes, Sec/Treas.**
CEO, Eno Transportation

**Radhika Fox**
CEO, US Water Alliance

**Ana Garcia-Ashley**
Exec. Dir, Gamaliel Foundation

**Anita Cozart**
Senior Director, Policy Link

**Jacky Grimshaw**
Vice President of Gov. Affairs, Center
for Neighborhood Technology

**Robert Martinez Jr.**
Intl. President, Intl. Association of
Machinists, AFL-CIO

**Greg Regan**
Sec/Treas., Transportation Trades
Dept, AFL-CIO

**John Samuelson**
Intl. President, Transport Workers
Union, AFL-CIO

**Joseph Sellers**
General President, SMART, Sheet
Metal, Air, Rail & Transportation Union,
AFL-CIO

**Christopher Shelton**
President, Communications Workers of
America, AFL-CIO

**Elizabeth (Liz) Shuler**
Secretary-Treasurer, AFL-CIO

**Maria Somma**
Organizing Director, United
Steelworkers Union, AFL-CIO

**Tanya Wallace-Gobern**
Exec. Director, National Black Worker
Center

**Xinge Wang**
Deputy Director, Transportation
Learning Center

**Sherilyn Wright**
Assistant to Pres., Intl. Brotherhood of
Electrical Workers (IBEW), AFL-CIO

**EXECUTIVE DIRECTOR**
Madeline Janis, Esq.

**DEPUTY DIRECTOR**
Linda Nguyen

February 6, 2019

Private and Confidential
Via Electronic Mail

Omer Waqas Khwaja
150 Hopkins Ave. Apt. 1
Jersey City, NJ 07306

Re: Termination of Employment at JMA

Dear Omer:

As I described to you in our meeting on February 4, 2019, several female JMA employees filed complaints in January, 2019 about what they described as bullying and intimidating behavior by you toward them over the past few months. Because of the seriousness of these allegations, JMA immediately engaged outside counsel to investigate these claims. Then on February 4th, I presented the complaints to you in a video call and gave you an opportunity to respond to our concerns. After much consideration, we have decided to terminate your employment as New York Campaign Director for just cause, effective February 6, 2019 in conformance with the standards set out in JMA's Employee Handbook. There are a number of reasons for this decision that will be summarized in this letter. We believe that your serious performance issues stand in the way of the advancement of the organization's goals, and are not in alignment with our values and expectations of a supervisor.

As you know from regular check in meetings, we have shared concerns regarding various aspects of your work performance. We have provided you with various work planning and other organizational tools, shared template documents to guide your work, made extensive revisions to and given you feedback on work products, in addition to sending you to a management training with The Management Center. Below are four areas of major concern that have contributed to our decision to discontinue your employment with JMA.

First and most concerning, is your problematic and ineffective supervision as well as bullying of junior level staff in the New York office. You manufactured a sense of intense division and isolation between junior staff in New York and the rest of the organization, leading them to believe that we were "at war" internally. You regularly characterized coalition partners and other female JMA managers using vulgar, offensive, and at times misogynist language. You regularly belittled, humiliated and made staff feel inadequate and manipulated by conducting pop quizzes in the office, making staff perform demeaning tasks, and discussing how other candidates that had been considered for their position were superior. Your erratic, at times explosive behavior, created an environment of fear, intimidation and mistrust. You were regularly contradictory or vague in the direction you gave your team, failed to take responsibility for your work, were unable to inspire confidence in and failed to adequately support your team. Your verbal attack and bullying of junior staff in the New York office during the January 15, 2019 incident related to the Medium article resulted in an investigation, surfacing the serious issues outlined above.

**California**
525 South Hewitt Street, Los Angeles, CA 90013
P. 213.358.6548

**Illinois**
1 North State Street, #1500, Chicago, IL 60602
E. info@jobstomoveamerica.org   W. JobsToMoveAmerica.org

**New York**
25 Broadway, 9th Fl, New York, NY 10004

**JOBS TO MOVE AMERICA**

**BOARD OF DIRECTORS**

**Ed Wytkind, Chair**
President, EW Strategies LLC

**Dr. Beverly Scott, Vice-Chair**
Beverly Scott & Associates

**Robert Puentes, Sec/Treas.**
CEO, Eno Transportation

**Radhika Fox**
CEO, US Water Alliance

**Ana Garcia-Ashley**
Exec. Dir, Gamaliel Foundation

**Anita Cozart**
Senior Director, Policy Link

**Jacky Grimshaw**
Vice President of Gov. Affairs, Center
for Neighborhood Technology

**Robert Martinez Jr.**
Intl. President, Intl. Association of
Machinists, AFL-CIO

**Greg Regan**
Sec/Treas., Transportation Trades
Dept, AFL-CIO

**John Samuelsen**
Intl. President, Transport Workers
Union, AFL-CIO

**Joseph Sellers**
General President, SMART, Sheet
Metal, Air, Rail & Transportation Union,
AFL-CIO

**Christopher Shelton**
President, Communications Workers of
America, AFL-CIO

**Elizabeth (Liz) Shuler**
Secretary-Treasurer, AFL-CIO

**Maria Somma**
Organizing Director, United
Steelworkers Union, AFL-CIO

**Tanya Wallace-Gobern**
Exec. Director, National Black Worker
Center

**Xinge Wang**
Deputy Director, Transportation
Learning Center

**Sherilyn Wright**
Assistant to Pres., Intl. Brotherhood of
Electrical Workers (IBEW), AFL-CIO

**EXECUTIVE DIRECTOR**
Madeline Janis, Esq.

**DEPUTY DIRECTOR**
Linda Nguyen

Second, after over a year of employment with JMA, you continue to struggle with JMA's theory of change and developing strategy that reflects our comprehensive approach to campaigns. We are concerned about your struggle and reticence to take full ownership of your New York campaign. Despite significant discussion and brainstorming in one-on-one meetings and feedback on work products, you have been unable to develop goals that balance big picture thinking and a nuanced understanding of how the intersection of policy, community and worker organizing, and communications undergirds our work. Numerous union partners, board members, colleagues, Electrify NY coalition partners, and funders have also shared concern regarding your performance. Many have noted that it is difficult to follow the direction and progression of the New York JMA program due to the absence of strategy, a campaign plan and regularly shifting priorities. This has resulted in issues with clarity, direction and accountability. For example, the absence of 2018 and 2019 campaign plans resulted in: overprioritizing the Kawasaki campaign; a lack of depth and movement on the MTA policy campaign; a community transit survey that produced no concrete results; an overemphasis on the New York legislature when it is of little relevance to our campaigns; and a research memo that failed to answer key campaign questions.

Third, you continue to struggle with organization, careful attention to detail and accountability. You have shown up to supervision calls, management meetings, staff meetings, Electrify NY coalition and other meetings late on numerous occasions.  You regularly failed to follow through on assigned tasks on time, including turning in work plans, POPs, meeting agendas, and administrative forms. Your lack of organization, unpolished emails, improperly formatted written products, and lack of preparation for meetings have hurt JMA's reputation with coalition and labor partners, as well as with funders. Key pieces of JMA's New York campaign have stagnated due to your inability to plan and follow through, including: lack of progress on relationship development with key MTA bus staff following a February 20, 2018 meeting with Geoffrey Ray and other NYCT procurement staff; poor follow through after a September 26, 2018 meeting with Darryl Irick; no progress on the cultivation of MTA board members Moerdler, Samuelsen, Vanterpool and Jones following the April 25, 2018 board meeting turnout; and no advancement made with scheduling a follow up meeting with Ronnie Hakim following a very positive May 25, 2018 meeting.

Lastly, you struggle to communicate clearly, succinctly and convincingly. At times, you lack self-awareness. For example, at a March 14, 2018 presentation at an ElectrifyNY coalition meeting, you were unprepared, disorganized in your thoughts and unable to clearly lay out JMA's vision, strategy and program for winning a Climate Manufacturing Careers Policy. In staff, supervision and management team meetings, and JMA Board of Director meetings you regularly talk in monologue, are difficult to follow and are often off topic. In funder meetings you struggle with poise, to effectively talk about JMA's NY work and to present your personal story in a compelling way. In a Nova Bus meeting in early 2018, you allowed yourself to be baited, lost control of your temper and used profanity multiple times.

After much consideration, we have decided that you are not a fit for a leadership position at JMA and that JMA has "just cause" as defined in the Employee Handbook to terminate

**California**
525 South Hewitt Street, Los Angeles, CA 90013
P. 213.358.6548

**Illinois**
1 North State Street, #1500, Chicago, IL 60602
E. info@jobstomoveamerica.org   W. JobsToMoveAmerica.org

**New York**
25 Broadway, 9th Fl, New York, NY 10004

## JOBS TO MOVE AMERICA

**BOARD OF DIRECTORS**

**Ed Wytkind, Chair**
President, EW Strategies LLC

**Dr. Beverly Scott, Vice-Chair**
Beverly Scott & Associates

**Robert Puentes, Sec/Treas.**
CEO, Eno Transportation

**Radhika Fox**
CEO, US Water Alliance

**Ana Garcia-Ashley**
Exec. Dir, Gamaliel Foundation

**Anita Cozart**
Senior Director, Policy Link

**Jacky Grimshaw**
Vice President of Gov. Affairs, Center
for Neighborhood Technology

**Robert Martinez Jr.**
Intl. President, Intl. Association of
Machinists, AFL-CIO

**Greg Regan**
Sec/Treas., Transportation Trades
Dept, AFL-CIO

**John Samuelsen**
Intl. President, Transport Workers
Union, AFL-CIO

**Joseph Sellers**
General President, SMART, Sheet
Metal, Air, Rail & Transportation Union,
AFL-CIO

**Christopher Shelton**
President, Communications Workers of
America, AFL-CIO

**Elizabeth (Liz) Shuler**
Secretary-Treasurer, AFL-CIO

**Maria Somma**
Organizing Director, United
Steelworkers Union, AFL-CIO

**Tanya Wallace-Gobern**
Exec. Director, National Black Worker
Center

**Xinge Wang**
Deputy Director, Transportation
Learning Center

**Sherilyn Wright**
Assistant to Pres., Intl. Brotherhood of
Electrical Workers (IBEW), AFL-CIO

**EXECUTIVE DIRECTOR**
**Madeline Janis, Esq.**

**DEPUTY DIRECTOR**
**Linda Nguyen**

your employment. The information in this letter is private and confidential and will not be shared outside of a "need to know" basis within JMA.

We ask that you immediately cease all work activities and return all JMA property in your possession or control including but not limited to, cell phone, laptop, office keys, electronic files, thumb drives, and any and all other organizational property. JMA will pay your salary through February 8, 2019.  Julia Portillo will communicate with you on the benefits owed to you under JMA policy, state and federal law.

Regards,

Linda Nguyen
Deputy Director

Cc:  Madeline Janis, Esq., Executive Director
     Personnel File

**California**
525 South Hewitt Street, Los Angeles, CA 90013
P. 213.358.6548

**Illinois**
1 North State Street, #1500, Chicago, IL 60602
E. info@jobstomoveamerica.org

**New York**
25 Broadway, 9th Fl, New York, NY 10004

W. JobsToMoveAmerica.org

# EXHIBIT B

EEOC Form 161 (11-16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: Omer W. Khwaja<br>150 Hopkins Ave.<br>Apt. #1<br>Jersey City, NJ 07306 | From: New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |

☐   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2019-02551 | Jiancheng Wang,<br>Investigator | (212) 336-3753 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)

*Kay J. Berry*

**Kevin J. Berry,**
**District Director**

6/5/2019

*(Date Mailed)*

cc:
**Attn:**
**Director of Human Resources**
**JOBS TO MOVE AMERICA**
**525 S. Hewitt St.**
**Los Angeles, CA 90013**