```
┌─────────────────────────────────┐
│ USDC SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC #:_____           │
│ DATE FILED:__3/26/2021__        │
└─────────────────────────────────┘
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Omer Waqas Khwaja,

                              Plaintiff,

              -against-

Jobs to Move America et al.,

                              Defendants.

**1:19-cv-07070 (JPC) (SDA)**

**REPORT AND RECOMMENDATION**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE JOHN P. CRONAN, UNITED STATES DISTRICT JUDGE:**

Pending before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint. (Defs.' Mot., ECF No. 68.) For the reasons set forth below, I respectfully recommend that Defendants' motion be GRANTED IN PART and DENIED IN PART.

## PROCEDURAL HISTORY

On November 13, 2019, I issued a Report and Recommendation ("R&R") in this case in which I recommended that Defendants' motion to dismiss Plaintiff's original Complaint be granted, but that Plaintiff be given leave to replead. (11/13/19 R&R, ECF No. 41.) On April 21, 2020, District Judge Daniels adopted my R&R in full, dismissing the original Complaint and granting Plaintiff leave to file an amended pleading. (4/21/20 Mem. Dec. & Order, ECF No. 51.)

On June 15, 2020, Plaintiff filed a letter addressed to Judge Daniels that attached a proposed Amended Complaint. (Pl.'s 6/15/20 Ltr., ECF No. 56.) On October 5, 2020, this case was reassigned to District Judge Cronan. At an October 15, 2020 telephone conference held before me, Plaintiff, who had until then proceeded in this action *pro se*, appeared through counsel and sought leave to file a revised Amended Complaint, which I granted. (*See* 10/15/20 Order, ECF No.

60.) On November 16, 2020, Plaintiff filed a revised Amended Complaint; on November 23, 2020,

he filed a corrected version, which is the operative complaint and the subject of Defendants'

pending motion to dismiss. (Am. Compl., ECF No. 63.) On December 21, 2020, Defendants moved

to dismiss the Amended Complaint; that motion was fully briefed on February 1, 2021. (*See* ECF

Nos. 68, 72, 73.)

## FACTUAL BACKGROUND

Familiarity with my prior R&R and with Judge Daniels' prior Decision and Order, which set

forth the factual background of this case (*see* 11/13/19 R&R at 1-5; 4/21/20 Mem. Dec. & Order

at 2-3), is presumed. In summary, Plaintiff, Omer Waqas Khwaja ("Khwaja" or "Plaintiff"), is a

former employee of defendant Jobs to Move America ("JMA"), a California not-for-profit

corporation.[1] (Am. Compl. ¶¶ 2-3.) During the time period relevant to this dispute, defendant

Madeline Janis ("Janis") was JMA's Executive Director, and defendant Linda Perez-Nguyen[2]

("Nguyen") was JMA's Deputy Director (JMA, Janis, and Nguyen each a "Defendant" and,

collectively, "Defendants").[3] (*Id*. ¶¶ 4-5.) In his Amended Complaint, as in his original Complaint,

Khwaja alleges that Defendants subjected him to (1) gender, national origin and race-based

discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) retaliation in

---

[1] The caption of certain filings in this action have erroneously referred to JMA as "Jobs Move to America."

[2] Although Paragraph 5 of the Amended Complaint identifies Nguyen as "Linda Nguyen-Perez," the Amended Complaint's caption and introductory paragraph identify her as "Linda Perez-Nguyen." (Am. Compl. at 1, ¶ 5.) In any event, this Report and Recommendation will use the shorthand of "Nguyen" when referring to this Defendant, as Plaintiff, Judge Daniels and I have done throughout this case.

[3] The caption of the Amended Complaint also "names" as defendants "ABC Corps I-X," but the body of the Amended Complaint never makes any reference to any such entities; likewise for the caption and body of the original Complaint. As further discussed *infra*, I recommend dismissal of all claims against these fictional defendants.

violation of Title VII; (3) violation of the Equal Pay Act (the "EPA"); (4) retaliation in violation of the EPA; (5) violation of the New York Equal Pay Law (the "EPL"); (6) race discrimination in violation of 42 U.S.C. § 1981 ("Section 1981"); (7) retaliation in violation of Section 1981; (8) discrimination in violation of the New York State Human Rights Law (the "NYSHRL"); (9) retaliation in violation of the NYSHRL; (10) gender discrimination in violation of the New York City Human Rights Law (the "NYCHRL"); (11) retaliation in violation of the NYCHRL; and (12) aiding and abetting violations of the NYSHRL. (*See id*. ¶ 1.) In addition, Khwaja includes four new causes of action in the Amended Complaint, claiming that Defendants subjected him to violations of (13) the Fair Labor Standards Act ("FLSA") and (14)-(16) various New York State wage-and-hour regulations codified in the New York Labor Law (the "NYLL") and the New York Codes, Rules & Regulations (the "NYCRR"). (*See id*. ¶¶ 1, 202-17.)

## DISCUSSION[4]

### I. Plaintiff's National-Origin And Race-Based Claims Should Be Dismissed[5]

#### A. Plaintiff's National-Origin And Race-Based Discrimination Claims

Title VII "requires a plaintiff asserting a discrimination claim to allege two elements: (1) the employer discriminated against him (2) because of his race, color, religion, sex, or national

---

[4] My prior R&R discusses most of the relevant legal standards at length; such discussion is incorporated by reference herein. (*See* 11/13/19 R&R at 6-13.) The legal standards relevant to Plaintiff's claims for wage and hour law violations under the FLSA and the NYLL are set forth in Sections IV and V, *infra*.

[5] The national origin and race-based claims discussed in this section are contained in the First, Second, Sixth and Seventh Causes of Action of the Amended Complaint. In addition, the Eighth, Ninth, Eleventh and/or Twelfth Causes of Action, while ambiguous, may contain such claims as well. (*See, e.g.*, Am. Compl. at 39 & ¶ 174 (Eighth Cause of Action subtitled "*Gender* Discrimination: NYSHRL," but containing the core allegation that "Defendants discriminated against Plaintiff . . . on the basis of Plaintiff's identification as a man *of color*" (emphases added)).)

origin." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015).[6] At the motion to dismiss stage, a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." *Id*. at 84 (quoting *Littlejohn*, 795 F.3d at 306, 311).

Notwithstanding this low bar, and notwithstanding the new allegations ostensibly pertaining to national-origin and race-based discrimination that Plaintiff has added in the Amended Complaint (*see* Am. Compl. ¶¶ 43-57, 62-68, 71, 76-78), Plaintiff has not adequately alleged that Defendants discriminated against him because of his national origin or race.

With regard to national origin, Plaintiff's Amended Complaint contains no allegations concerning any comment made or attitude held—whether by Defendants or anyone else—concerning Plaintiff's national origin. Plaintiff states that he is "a thirty-seven year old man of Pakistani descent" and "a citizen of Pakistani origin" (Am. Compl. ¶¶ 10, 165), but those two statements (of his own) are the only times "Pakistan" (or "Pakistani") appears in the Amended Complaint. Other terms that could relate to Plaintiff's national origin, such as "Asia," "Asian," "foreign" and "immigrant" also never appear in the Amended Complaint. The Amended Complaint thus provides no basis—not even "minimal support"—for the proposition that Plaintiff's termination was motivated by Defendants' discriminatory intent vis-à-vis his national origin. *Vega*, 801 F.3d at 84; *see also Kajoshaj v. New York City Dep't of Educ.*, 543 F. App'x 11, 14 (2d Cir. 2013) (granting motion to dismiss claims of national-origin discrimination where plaintiffs failed to "assert that any defendant referenced their religion or national origin, much less that they did so in a derogatory manner"); *Fridia v. Henderson*, No. 99-CV-10749 (BSJ), 2000 WL

---

[6] The same standard applies to claims pursuant to the NYSHRL and Section 1981. *See Littlejohn v. City of New York*, 795 F.3d 297, 312, 320-21 (2d Cir. 2015). Thus, the Court considers these claims in tandem.

1772779, at *7 (S.D.N.Y. Nov. 30, 2000) (granting motion to dismiss where plaintiff failed to "contend that anyone at [her former employer] said anything concerning her race, sex, or national origin").

While Plaintiff's Amended Complaint contains numerous allegations involving Defendants' statements and/or attitudes regarding race, Plaintiff similarly fails to allege any fact suggesting that Defendants were racially discriminatory *toward him*. Plaintiff states that he is of Pakistani descent. (Am. Compl. ¶ 10.) While he alleges a variety of comments made and biases held by Defendants toward racial or ethnic backgrounds other than his own (*see, e.g.*, *id*. ¶¶ 60, 71 (concerning "black" or "African-American" persons); *id*. ¶¶ 59, 77 (concerning "white" and/or "Jewish" persons)), he does not allege any comment or attitude concerning his own race or ethnicity.[7]

Plaintiff makes conclusory allegations as to Defendants' attitudes toward "people of color" and "men of color" generally (*see, e.g.*, Am. Compl. ¶¶ 58, 71), and asserts that he identifies as a man of color himself. (*See id*. ¶¶ 10, 31.) However, he does not allege any fact to support the inference that Defendants applied to people or men "of color" generally any attitude they allegedly held or expressed toward black (or white, or Jewish) persons.[8]

---

[7] Plaintiff again identifies a comment with racial overtones that was directed at him but that referenced a race that is not his own, alleging that Nguyen "twice disparagingly referred to Plaintiff as 'having an old, white man trapped inside his body.'" (Am. Compl. ¶ 64; *see also* Compl., ECF No. 2, ¶ 28(a).) As I stated in my prior R&R, however, this comment is ambiguous as to whether it concerned Plaintiff's race or national origin, and Plaintiff's Amended Complaint has not added any allegations or context that clarify that ambiguity. (*See* 11/13/19 R&R at 15-16 (citing *Clemente v. New York State Div. of Parole*, 684 F. Supp. 2d 366, 377 (S.D.N.Y. 2010)).)

[8] Rather, Plaintiff repeatedly makes factual allegations that, on their face, concern nonracial categories and/or racial categories inapplicable to Plaintiff, followed by a conclusory *characterization* of that factual allegation as evidence of an attitude toward "people of color," a racial category with which Plaintiff identifies. (*See, e.g.*, Am. Compl. ¶¶ 60, 63, 67, 68, 71 (involving factual allegations concerning,

Plaintiff alleges two instances of Defendants making a comment concerning persons "of color," but neither supports an inference of racial disparagement. In the first instance, Plaintiff alleges that Nguyen "accused [him] of being insufficiently mindful of [a co-worker's] identity as a 'woman of color,'" to which Plaintiff responded "that he was owed some collegiality and respect as a 'man of color.'" (Am. Compl. ¶¶ 30-31.) If anything, however, this exchange on its face would suggest that the JMA work environment was one in which being "of color" was contemplated as entitling a person to deference and respect. (*See also id*. ¶ 65 (alleging that Janis had pressured Plaintiff's coworker to *favor* "nonwhite" candidates for a job opening).) In the second instance, Plaintiff alleges as follows:

> Defendant Nguyen prevented Plaintiff from hiring his preferred candidate for the open New York Organizer position because that candidate "was a young woman of color" and, therefore, "more suited for a researcher position." Defendant Nguyen did this to pressure Plaintiff into hiring a black male organizer.

(*Id*. ¶ 62.) Whatever questions this allegation might raise about the basis of Nguyen's assessment of the positions for which Plaintiff's preferred candidate was suitable, the fact that Nguyen prevented a woman of color from being hired in order to enable a man of color to be hired does not support the proposition that Defendants discriminated against "people of color" (still less "men of color") generally.

To the extent they are accurate, Plaintiff's allegations concerning racialized comments at JMA are disturbing, especially regarding African Americans. But Plaintiff is not African American, and he has pleaded no non-conclusory race-based allegation to support the inference that Defendants discriminated against *him*. *See Richardson v. New York State Dep't of Corr. Serv.*, 180

---

respectively, "prominent black figures"; "women" and "a black male colleague"; "men"; "a black employee"; and "African-American employees").)

F.3d 426, 440 (2d Cir. 1999) (ruling that plaintiff failed to show "that she was discriminated against because of her race" where all but one derogatory comment she alleged did not "involve[] [her] protected racial category"), *abrogated on other grounds*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *see also Welzel v. Bernstein*, 436 F. Supp. 2d 110, 121 (D.D.C. 2006) (ruling that plaintiff could not recover under Title VII or Section 1981 for derogatory comments concerning African Americans where "plaintiff is *not* African-American" (emphasis in original)). Accordingly, I recommend that Plaintiff's Sixth Cause of Action, as well as any race and national-origin component of Plaintiff's First, Eighth and Twelfth Causes of Action, be dismissed.[9]

### B.   Plaintiff's National-Origin And Race-Based Retaliation Claims

Plaintiff's Seventh Cause of Action, as well as any race or national-origin component of Plaintiff's Second, Ninth and Eleventh Causes of Action, also should be dismissed. The Amended Complaint alleges no protected activity related to race or national-origin discrimination. Indeed, in support of his contention that he has alleged race or national-origin based retaliation, Plaintiff's memorandum cites only to allegations that exclusively reference his objections to Defendants' purported *gender* discrimination. (*See* Opp. Mem., ECF No. 72, at 4 (citing Am. Compl. ¶¶ 66, 80-82, 116-17).)

---

[9] As an additional, independent basis for dismissal of these claims, Plaintiff's Amended Complaint, like his original Complaint, does not plausibly allege a connection between Defendants' alleged comments regarding race, on the one hand, and Plaintiff's termination, on the other. *See Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149-50 (2d Cir. 2010) (instructing courts, when determining whether remark is probative of discriminatory intent, to consider "whether it was related to the decision-making process" at issue); *Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 438 (S.D.N.Y. 2015) (motion to dismiss discrimination claims granted where complaint "d[id] not allege that the remarks were 'related to the decision-making process' resulting in Plaintiff's termination" (quoting *Henry*, 616 F.3d at 149)).

II.     **Plaintiff Has Not Pled Plausible Claims Under The Federal EPA And New York EPL[10]**

While Plaintiff's Amended Complaint provides additional detail regarding his contention that Defendants violated the EPA and the EPL (*see* Am. Compl. at 43-57), here too his allegations are insufficient to state a claim.

A.     **Plaintiff's Equal-Pay-Based Discrimination Claims**

Plaintiff's claims under the EPA and EPL[11] are grounded on his allegations that he "was paid less than the only similarly situated Director, a female, even though he had more years of experience and was expected to perform an equivalent or greater amount of work with less resources and staff." (Am. Compl. ¶ 152.) In my prior R&R, I gave Plaintiff notice that, in order to "provide sufficient factual matter to permit the inference that his job and the job of the other Director require equal skill, effort and responsibility or that the jobs are performed under similar working conditions," an amended pleading would need to "plead specific facts regarding his job and that of the other Director, including the job responsibilities and working conditions." (11/13/19 R&R at 18 & n.9 (citing *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254-55 (2d Cir. 2014) ).) Plaintiff has not done so.

While Plaintiff has made an effort in his Amended Complaint to flesh out a comparison between his position and that of JMA's Team Director for its California office, the new allegations essentially amount to the claim that he and his California counterpart shared the same title and the same staff category in the JMA Handbook. (*See* Am. Compl. ¶¶ 48-50, 53-54 (noting that both

---

[10] These claims are contained in the Third, Fourth and Fifth Causes of Action of the Amended Complaint.

[11] "An equal pay claim under New York Labor Law § 194 is analyzed under the same standards applicable to the federal Equal Pay Act." *Chiaramonte v. Animal Med. Ctr.*, 677 F. App'x 689, 690 n.1 (2d Cir. 2017).

he and his counterpart were Team Directors and discussing job responsibilities and duties common to "Director level staff," "as laid out in Defendants' Handbook").) But "a successful EPA claim depends on the comparison of *actual job content*; broad generalizations drawn from job titles, classifications, or divisions, and conclusory assertions of sex discrimination, cannot suffice." *Port Auth. of N.Y. & N.J.*, 768 F.3d at 256 (emphasis added). Here, to the extent the Amended Complaint does allege any specifics about Plaintiff's job's content, the implication is that the nature of his job *diverged* from that of his California counterpart. (*See* Am. Compl. ¶ 52 (stating that Plaintiff's job involved out-of-state work; implying that his California counterpart's job did not); *id*. ¶ 56 (stating that Plaintiff's job had involved hiring employees whereas his California counterpart's job had not); *compare id*. ¶ 51 (JMA's California team was structured with a Director, a researcher and an organizer) *with id*. ¶¶ 13, 121, 127-28 (during his 13 months with JMA, Plaintiff was the only employee in the New York office for four months and directed only one other employee for another four months).) In short, Plaintiff's supplemented allegations remain insufficient "to permit 'the reasonable inference' that the relevant employee['s] job *content* was 'substantially equal.'" *Port Auth. of N.Y. & N.J.*, 768 F.3d at 256 (emphasis in original).

Moreover, Plaintiff alleges no fact to undermine the plausibility of a straightforward explanation for the $2,000 differential between his salary and that of his California counterpart: the "Director Staff Steps" system that JMA utilized, as set forth the JMA Handbook. (*See* Janis Decl. Ex. 1 ("JMA Handbook"), at 21-22 (ECF No. 68-2, at 26-27).[12]) *See also* 29 U.S.C. § 206(d)(1)

---

[12] "In deciding a motion to dismiss under Rule 12(b)(6), the court may refer 'to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Fishbein v. Miranda*, 670 F. Supp. 2d 264, 271 (S.D.N.Y. 2009) (quoting *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)). Here, Plaintiff knew of the JMA Handbook and relied on it in

(providing for "seniority system" exception to wage discrimination prohibition); N.Y. Lab. Law § 194(3) (same); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) ("[I]n making the plausibility determination, the court is to 'draw on its judicial experience and common sense.'" (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009))). Taking all circumstances into account, this step system "provide[s] a more plausible explanation" for the salary discrepancy at issue than do Plaintiff's conclusory allegations of gender discrimination. *Kajoshaj*, 543 F. App'x at 14 (citing *Iqbal*, 556 U.S. at 681) (in concluding that plaintiffs' allegations did not state claim for relief, considering plaintiffs' poor report cards a "more plausible explanation" for defendant's conduct than discrimination).[13]

### B.    Plaintiff's Equal-Pay-Based Retaliation Claims

With regard to Plaintiff's retaliation claims under the EPA and EPL, Plaintiff's Amended Complaint has not remedied his original Complaint's failure to allege actionable retaliation causally related to any "complaint" he made regarding pay equity. (*See* Opp. Mem. at 5-7 (in identifying facts supporting Plaintiff's EPA and EPL claims, failing to cite any fact concerning any complaint he raised with Defendants).[14])

---

bringing suit (*see, e.g.*, Am. Compl. ¶¶ 15, 18-19, 38-39, 49-50, 53-54, 120); in fact, Plaintiff himself filed as an exhibit to a prior version of the Amended Complaint a version of the JMA Handbook containing the same "Director Staff Steps" system. (*See* 6/15/20 Prop. Am. Compl., Ex. 3, at 22 (ECF No. 56-1, at 30).)

[13] In addition, Plaintiff pleads no allegation to rebut the presumption that he and his California counterpart worked in different "establishments" for purposes of the EPA and EPL. *See* 29 U.S.C. § 206(d)(1) (barring wage discrimination "within any establishment"); N.Y. Lab. Law § 194(1) (barring wage discrimination among employees "in the same establishment"); 29 C.F.R. § 1620.9 (presumption is that "'establishment' . . . refers to a distinct physical place of business rather than to an entire business"); N.Y. Lab. Law § 194(3) ("[E]mployees shall be deemed to work in the same establishment if [they] work for the same employer . . . in the same geographical region, no larger than a county[.]").

[14] To the extent Plaintiff contends that Defendants' alleged increase of his "out-of-state work" in response to his Paid Family Leave request constituted "retaliation" to a "complaint" in violation of the EPA or EPL (*see* Opp. Mem. at 6; Am. Compl. ¶ 52; *but see id*. ¶ 133 (citing in Title VII context instead)), the Court

Accordingly, I recommend that Plaintiff's Third, Fourth and Fifth Causes of Action be dismissed in their entirety.

**III.**    **Plaintiff's Gender-Based Claims Should Survive Dismissal[15]**

   **A.**    **Plaintiff's Gender-Based Discrimination Claims**

To state a discrimination claim[16] based on an adverse employment action, "a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega*, 801 F.3d at 86. Because "smoking gun" evidence is rare in discrimination cases, "plaintiffs usually must rely on 'bits and pieces' of information to support an inference of discrimination, *i.e.*, a 'mosaic' of intentional discrimination." *Id*. Accordingly, at the pleading stage, a plaintiff may defeat a motion to dismiss by alleging "facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id*. at 87. "An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in [relevantly] degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn*, 795 F.3d at 312

---

should reject that argument, because New York's Workers' Compensation Law provides the exclusive remedy for Family Leave claims. *See* N.Y. Workers' Comp. L. § 203-A ("Retaliatory Action Prohibited for Family Leave"); *id*. § 221 ("Determination of Contested Claims for Disability and Family Leave Benefits"); *Williams v. Brooklyn Union Gas Co.*, 819 F. Supp. 214, 230-31 (E.D.N.Y. 1993) ("Where an employee has a remedy against his employer in proceedings under the Workers' Compensation Law, that remedy is exclusive."); *Burlew v. Am. Mut. Ins. Co.*, 63 N.Y.2d 412, 416 (1984) ("[A]ll employer conduct that is regulated by the Workers' Compensation Law is subject to the protection of that law's exclusivity[.]").

[15] The gender claims discussed in this section are contained in the First, Second, Eighth, Ninth, Tenth, Eleventh and Twelfth Causes of Action of the Amended Complaint.

[16] The same standard applies to claims pursuant to the NYSHRL and Section 1981. *See Littlejohn v. City of New York*, 795 F.3d 297, 312, 320-21 (2d Cir. 2015). Thus, the Court considers these claims in tandem.

(internal quotation marks omitted). At the motion to dismiss stage, the evidence necessary to satisfy the plaintiff's burden is "minimal." *Id*. at 313.

Plaintiff has met this minimal burden. Plaintiff argues that he was "terminated because of his gender," and Defendants do not dispute that termination qualifies as an adverse employment action.[17] (Opp. Mem. at 9; *see* Defs.' Mem., ECF No. 68-1, at 17.) As to pleading discrimination, Plaintiff's Amended Complaint contains a "mosaic" of allegations sufficient to "plausibl[y] support" the "minimal inference" that his gender was a motivating factor in Defendants' decision to terminate him. *Vega*, 801 F.3d at 84, 86.

Among other things, Plaintiff's Amended Complaint alleges that Defendants "expressed animus generally towards men" (Am. Compl. ¶ 58; *see also id*. ¶ 67); that Defendants made recruiting and hiring decisions based in part on applicants' genders (*see id*. ¶ 61), tending to favor women (*see id*. ¶¶ 63, 65); that female employees received more favorable treatment from JMA management than Plaintiff did (*see id*. ¶¶ 30-31, 34-35, 41); that, according to Nguyen, approximately two months before Plaintiff's termination, "women had started to come together" in opposition to practices Plaintiff had implemented for the team he managed (*see id*. ¶ 89); that approximately one month before Plaintiff's termination, JMA's Communications Director stated that, because Plaintiff was a man, it was inappropriate for him to be listed as lead author of a company blog post (*see id*. ¶ 105); and that, within a few months after Plaintiff's termination,

---

[17] Even assuming that the other actions that Defendants purportedly took against Plaintiff, *i.e.*, regarding grievances related to parental leave; long working hours and responsibility for other employees' errors; denied requests for salary adjustment; revoked permission to work from home; and being told it would be inappropriate for him to be listed as the lead author of a blog post, do not constitute actionable adverse employment actions (*see* Defs.' Mem. at 15-17), Plaintiff has stated a gender discrimination claim based upon his termination.

Defendants no longer had any men in management positions. (*See id*. ¶ 14; *see also id*. ¶ 79 (alleging that Janis and Nguyen "always" referred to JMA as a "'female led' organization" when interviewing male applicants).)

Plaintiff also alleged that Janis spoke disparagingly of men as "violent," but thought of him as an exception (Am. Compl. ¶ 65), and that his termination was preceded by an "emotional outburst" on his part that, he was later told, caused at least one witness to "fear[] for her safety." (*Id*. ¶¶ 106, 108.) Taken together, these allegations could plausibly support the inference that a motivating factor in Defendants' decision to terminate Plaintiff was Janis's conclusion that Plaintiff was not, in fact, "one of the very few non-violent ones," but just another "violent" man after all. (*Id*. ¶ 67.)

Defendants argue that, as to gender discrimination, Plaintiff alleges only "quintessential 'stray remarks'" and fails to support the inference of any "nexus between those comments and Plaintiff's termination." (Defs.' Mem. at 17-18.) But this overlooks Plaintiff's numerous gender-related allegations that do not involve "comments." (*See, e.g.*, Am. Compl. ¶¶ 14, 30-31, 34-35, 41, 61-63.) Further, even with regard to the comments alleged, the relevant question is not whether they be classified as "stray" or not, but rather the extent to which they "tend[] to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class." *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115-16 (2d Cir. 2007). "Taken together," Plaintiff has alleged a "mosaic" of sufficiently suggestive remarks to carry his minimal burden at this stage of the proceeding. *Vega*, 801 F.3d at 72.

Accordingly, I recommend that Plaintiff's Tenth Cause of Action and the gender-based component of Plaintiff's First, Eighth and Twelfth Causes of Action survive dismissal.

**B.**     **Plaintiff's Gender-Based Retaliation Claims**

Plaintiff also has sufficiently pled a claim of gender-based retaliation.

"[F]or a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90.[18] A plaintiff has engaged in a protected activity if he "personally complains or is critical about the discriminatory employment practices of [his] employer." *Littlejohn*, 795 F.3d at 318 (cleaned up).

Here, Plaintiff alleges that he (1) "raised concerns about the risk factors presented based on the homogenous nature of Defendants' primarily female workforce" (Am. Compl. ¶ 66; *see also id*. ¶ 69); "raised concerns internally" about Defendants' "unlawful and discriminatory stereotyping of men" and "failure to comply with New York State law requiring employers to develop a written sexual harassment policy and to train staff on that policy" (*id*. ¶ 80; *see also id*. ¶ 116); and refused to "participate in [Defendants'] illegal activity" of "unlawfully acquiring confidential information about charges filed with the EEOC." (*Id*. ¶ 90.) In response, Plaintiff alleges, Defendants "instructed [a colleague] to infiltrate [Plaintiff's] New York Team with the goal of promoting hostility towards Plaintiff based on his gender" (*id*. ¶ 82), leading to the disruption of practices he had implemented for his team (*id*. ¶ 85-86); placed Plaintiff on administrative leave (*id*. ¶ 90); and, ultimately, terminated Plaintiff. "Some of these actions,

---

[18] The same standard applies to claims pursuant to the NYSHRL. *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) ("All of plaintiffs' retaliation claims are analyzed pursuant to Title VII principles."). "[T]he retaliation inquiry under the [NY]CHRL is 'broader' than its federal counterpart." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010). Under the NYCHRL, "retaliation in any manner is prohibited, and [t]he retaliation . . . need not result in an ultimate action with respect to employment . . . or in a materially adverse change in the terms and conditions of employment." *Id.* (internal quotation marks and citation omitted).

considered individually, might not amount to much. Taken together, however, they plausibly paint a mosaic of retaliation and an intent to punish [Plaintiff] for complaining of discrimination." *Vega*, 801 F.3d at 92.

Accordingly, I recommend that the gender-based component of Plaintiff's Second, Ninth, Eleventh and Twelfth Causes of Action survive dismissal.

### C.   Plaintiff's Surviving Claims As Applied To Specific Named Defendants

While Plaintiff asserts his Title VII claims (*i.e.*, his First and Second Causes of Action) exclusively against JMA, he asserts his NYSHRL and NYCHRL claims (*i.e.*, his Eighth through Twelfth Causes of Action) against all Defendants. I recommend that these latter claims go forward against each of JMA, Janis and Nguyen, with the exception of Plaintiff's Twelfth Cause of Action, which I recommend go forward against Janis and Nguyen only.

Unlike Title VII, "[b]oth the NYSHRL and the NYCHRL allow for individual liability." *Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379, 394 (S.D.N.Y. 2019). Under the NYSHRL, "an individual is properly subject to liability for discrimination when that individual qualifies as an 'employer'"; *i.e.*, "when that individual has an ownership interest in the relevant organization or the 'power to do more than carry out personnel decisions made by others.'" *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 57 (2d Cir. 2012) (quoting *Patrowich v. Chem. Bank*, 63 N.Y.2d 541 (1984)). Thus, courts will find an individual defendant subject to "employer liability" under section 296(1) of the NYSHRL if he or she had "the power to hire and fire the plaintiff." *Id*. In addition, a co-worker who "actually participates in the conduct giving rise to a discrimination claim" is subject to aiding-and-abetting liability under section 296(6) of the NYSHRL "even [where] that co-worker lacked the authority to either hire or fire the plaintiff." *Feingold v. New*

*York*, 366 F.3d 138, 158 (2d Cir. 2004) (citation omitted); *see also Rojas* v. *Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011) ("[A]n individual defendant may be held liable under the aiding and abetting provision of the NYSHRL if he actually participates in the conduct giving rise to a discrimination claim." (internal quotation marks omitted)).

Under the NYCHRL, there is a "broader basis for direct individual liability" than under the NYSHRL, such that employees may be held liable "regardless of ownership or decisionmaking power." *Schaper*, 408 F. Supp. 3d at 395 (citation omitted). As with the NYSHRL, however, liability under the NYCHRL "is limited to those individual employees who actually participated in the conduct giving rise to plaintiff's [] claim." *Id*. (cleaned up) (citation omitted).

Here, Plaintiff has alleged facts that support the inference that Janis and Nguyen jointly made hiring and firing decisions, including with regard to his own firing. (*See* Am. Compl. ¶ 119 ("Janis stated that she and [] Nguyen had been considering removing Plaintiff from his role 'for some time[.]'"); *see also id*. ¶¶ 62, 68, 112.) Plaintiff also has alleged the "actual[] participat[ion]" of both Janis and Nguyen in the discriminatory and retaliatory conduct at issue. (*See, e.g.*, Am. Compl. ¶¶ 65, 67 (Janis); *id*. ¶¶ 30-31, 41 (Nguyen); *id*. ¶¶ 34-35, 63, 79 (Janis and Nguyen).) Accordingly, Plaintiff has sufficiently pled both employer liability and aiding and abetting liability under the NYSHRL, as well as direct liability under the NYCHRL, against both Janis and Nguyen.

Finally, while Plaintiff has also sufficiently pled JMA's direct liability under the NYSHRL and NYCHRL, JMA should be dismissed from Plaintiff's Twelfth Cause of Action on the basis that "an employer cannot aid and abet its own alleged violations of the discrimination laws." *Gallo v. Alitalia-Linee Aeree Italiane-Societa per Azioni*, 585 F. Supp. 2d 520, 546 (S.D.N.Y. 2008).

**IV.**     **Plaintiff's Thirteenth And Fourteenth Causes Of Action Should Be Dismissed**

Plaintiff's claims of overtime violations under the FLSA and the NYLL (Thirteenth and Fourteenth Causes of Action) are not supported by any non-conclusory allegation, and they are undermined both by the Amended Complaint's factual allegations and the JMA Handbook. Accordingly, I recommend that they be dismissed.

Both the FLSA and the NYLL "mandate[] overtime pay and appl[y] the same exemptions." *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 105 (2d Cir. 2010). As relevant here, under the "administrative exemption" to these statutes, an employee earning more than $250 per week is not entitled to overtime if his or her job meets the "duties test," which entails that his or her "primary duty" consists of "the performance of office or nonmanual work directly related to management policies or general business operations" and requires "the exercise of discretion and independent judgment." *Id.* (quoting 29 C.F.R. § 541.2(a), (e)(2)). An employee's "primary duty" is the duty that consumes a "major part, or over [fifty] percent, of the employee's time." *Id.* at 107 (quoting 29 C.F.R. § 541.103). An employee may exercise "discretion and independent judgment" even where his or her decisions are "subject to review" or otherwise not final. *Patton v. Ford Motor Co.*, No. 14-CV-00308 (RJA) (HBS), 2017 WL 2177621, at *6 (W.D.N.Y. May 18, 2017) (quoting 29 C.F.R. § 541.202(b)).

In support of his contention that he qualified for overtime, Plaintiff's Amended Complaint offers only nakedly conclusory allegations. (*See* Am. Compl. ¶¶ 125-27 (alleging that Plaintiff's duties "entitled him to receive premium pay for overtime," included work "of the kind that is typically performed by hourly workers," and "included work that is considered nonexempt under the FLSA"); *see also* Opp. Mem. at 10 (citing Am. Compl. ¶¶ 125-27).) Nowhere does Plaintiff

allege factual specifics as to what any such non-exempt duty entailed. Moreover, while Plaintiff alleges that, during certain months, his duties "included" work considered nonexempt (Am. Compl. ¶¶ 126, 127), Plaintiff never alleges that any such non-exempt duties were his "primary duties." *See Schwind v. EW & Assocs., Inc.*, 357 F. Supp. 2d 691, 705 (S.D.N.Y. 2005) (ruling that plaintiff VP of Sales fell under the administrative exemption, because, "[w]hile plaintiff relies on the fact that sales work is nonexempt, he fails to consider his other duties [] and the fact that the work he did for defendants involved much more than just selling").

In contrast, ample factual allegations in the Amended Complaint, and in the JMA Handbook on which it relies, indicate that Plaintiff's position passed the duties test. As Defendants note in their briefing, all of Plaintiff's job duties described in the Amended Complaint's factual allegations would appear to fall under the administrative exemption. (*See* Defs.' Mem. at 22-23 (citing Am. Compl. ¶¶ 21, 22, 23, 52, 56, 57, 61, 65, 71, 73, 78, 87, 88).) These include, among other things, recruiting and hiring employees, "establishing a New Jersey Team," and attending management meetings—quintessential administrative duties. *See, e.g., Schwind*, 357 F. Supp. 2d at 706 (finding it "clear that plaintiff exercised discretion and independent judgment" where plaintiff interviewed and hired others). Further, the JMA Handbook expressly provides that Plaintiff's position was part of JMA's "Management Team" and was tasked with duties requiring discretion and independent judgment. (*See* Am. Compl. ¶ 49 (alleging that Plaintiff was "considered [a] Team Director[] under Defendants' Handbook"); JMA Handbook at 4 (providing that "Team Directors" are part of the "Management Committee," which "oversees both program and management matters, which includes providing direction, accountability and resource allocation"); *id.* at 12 (providing that Team Directors design training

and development plans, and that staff position reassignments are "at the[ir] discretion"); *id.* at 13 (Team Directors evaluate probationary employees); *id.* at 20 (Team Directors develop approaches for addressing performance problems).)[19]

Because Plaintiff has not plausibly alleged his entitlement to overtime compensation under the relevant federal and state statutes, I recommend that Plaintiff's Thirteenth and Fourteenth Causes of Action be dismissed.

**V.     Plaintiff's Fifteenth And Sixteenth Causes Of Action Should Be Dismissed**

Plaintiff's Fifteenth and Sixteenth Causes of Action are based solely on state law and do not share substantial facts with any claim that I am recommending survive dismissal. Accordingly, I recommend that the Court dismiss these claims without prejudice for lack of supplemental jurisdiction.

"In a civil action in which it has original jurisdiction, a district court may exercise supplemental jurisdiction over 'all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" *Thomas v. EONY LLC*, No. 13-CV-08512 (JPO), 2015 WL 1809085, at *4 (S.D.N.Y. Apr. 21, 2015) (quoting 28 U.S.C. § 1367(a)). To constitute the same Article III case or controversy, "the federal claim and state claim must stem from the same 'common nucleus of operative fact[.]'" *Id.* (quoting *Montefiore Med. Ctr. v. Teamsters Local 272,* 642 F.3d 321, 332 (2d Cir. 2011)) (ruling that wage-and-hour claims and employment discrimination claims did not

---

[19] The JMA Handbook also directly indicates that salaried positions, such as Plaintiff's, are overtime-exempt. (*See* JMA Handbook at 13 (distinguishing "[e]xempt employees," who "are paid a salary" and who "do not earn overtime compensation, so long as they make more than $47,000 per year," from "[n]onexempt employees," who "are paid by the hour, and are eligible to be paid for overtime work").)

form same case or controversy). "[T]he mere existence of an employment relationship is insufficient to cause [employment discrimination claims and wage-and-hour claims] to arise out of the same nucleus of operative fact." *Shibetti v. Z Rest., Diner & Lounge, Inc.*, 478 F. Supp. 3d 403, 408 (E.D.N.Y. 2020).

Here, the core allegation of Plaintiff's Fifteenth Cause of Action is that Defendants failed to pay Plaintiff in a timely manner during his first three pay periods, in violation of the NYLL. (*See* Am. Compl. ¶ 211.) The core allegation of Plaintiff's Sixteenth Cause of Action is that Defendants failed to furnish Plaintiff certain information with each wage payment, in violation of the NYLL and NYCRR. (*See id.* ¶ 215.) These Causes of Action, which do not involve any allegation of differential treatment of employees of different genders, and which expressly or implicitly date back to "the time Plaintiff started his Director role" (*id.* ¶ 211), arise from a set of facts entirely distinct from those relevant to Plaintiff's discrimination and retaliation claims. (*Compare* Opp. Mem. at 10-11 (identifying "facts [that] relate to Plaintiff's [wage-and-hour] claims" by citing Am. Compl. ¶¶ 16, 52, 125-30) *with id.* at 7-10 (identifying "facts [that] relate to Plaintiff's [gender discrimination and retaliation] claims" by citing a completely different set of paragraphs).)

In short, the state wage-and-hour claims forming the basis of Plaintiff's Fifteenth and Sixteenth Causes of Action "simply have nothing to do with" the federal gender-based claims over which this Court has original jurisdiction. *Shibetti*, 478 F. Supp. 3d at 408; *see also id.* at 411 (collecting cases that "decline to hear wage and discrimination claims together"); *Thomas*, 2015 WL 1809085, at *7 (dismissing state claims without prejudice after "conclud[ing] that the facts underlying the wage and hour claims are essentially unrelated—except for the employment

relationship—to the facts underlying the [discrimination] claims"). Accordingly, I recommend that those Causes of Action be dismissed without prejudice.

**VI.**     **The John Doe Defendants Should Be Dismissed**

I recommend that all claims against "ABC Corps I-X" be dismissed, given that the Amended Complaint—like Plaintiff's original Complaint—never once refers to these entities other than in the caption, and because in any event Plaintiff has failed to identify or serve them within 90 days after filing his Amended Complaint, as required by Fed. R. Civ. P. 4(m). *See, e.g.*, *Richardson v. City of New York*, No. 11-CV-02320 (LGS), 2013 WL 6476818, at *11 (S.D.N.Y. Dec. 10, 2013); *Barclay v. Poland*, No. 03-CV-06585 (CJS), 2013 WL 5703176, at *2 (W.D.N.Y. Oct. 17, 2013).

**VII.**     **Leave To Amend Should Be Denied**

In this Circuit, a District Court may deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009). Here, with regard to Plaintiff's discrimination, retaliation and equal pay claims, Plaintiff already has been given an opportunity to amend his claims, as well as judicial guidance as to his original Complaint's pleading deficiencies. Insofar as he has failed a second time to plead these claims, my recommendation is that further amendment is not warranted. *See, e.g.*, *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment[.]" (internal quotation marks omitted)); *Echavarria v. ABM Indus. Grp. LLC*, No. 20-CV-09247 (LLS), 2021 WL 794944, at *4 (S.D.N.Y. Feb. 26, 2021) (denying further leave to amend where Title VII plaintiff had already been given an opportunity to amend but had failed to cure the original complaint's deficiencies identified in

Court's prior opinion); *Avillan v. Brennan*, No. 16-CV-05611 (AJN) (RLE), 2018 WL 4680027, at *6 (S.D.N.Y. Sept. 28, 2018) (same). With regard to Plaintiff's wage-and-hour claims, I recommend that leave to amend be denied on the basis of futility.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Defendants' motion to dismiss the Amended Complaint be GRANTED IN PART and DENIED IN PART. Specifically, I recommend that (1) Plaintiff's First and Second Causes of Action be dismissed to the extent that they concern race or national-origin based discrimination or retaliation, but go forward against Defendant JMA with regard to gender-based discrimination and retaliation; (2) Plaintiff's Third, Fourth, Fifth, Sixth and Seventh Causes of Action be dismissed in their entirety; (3) Plaintiff's Eighth, Ninth, Tenth and Eleventh Causes of Action be dismissed to the extent that they concern race or national-origin based discrimination or retaliation but go forward against Defendants JMA, Janis and Nguyen with regard to gender-based discrimination and retaliation; (4) Plaintiff's Twelfth Cause of Action be dismissed to the extent that it concerns race or national-origin based discrimination or retaliation but go forward against Defendants Janis and Nguyen with regard to gender-based discrimination and retaliation; and (5) Plaintiff's Thirteenth, Fourteenth, Fifteenth and Sixteenth Causes of Action be dismissed in their entirety, the latter two without prejudice.

**SO ORDERED.**

Dated: New York, New York
    March 26, 2021

_____
STEWART D. AARON
United States Magistrate Judge

*   *   *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Cronan.

**THE FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).